IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| QUINTON HARRIS, GEOFFREY MILLER, NORMAN MOUNT, SCOTT ZINN, THOMAS TAYLOR, and JOHN BAKER,<br><br>Plaintiffs,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | 8:16CV381<br><br>ORDER |

This matter is before the Court on Plaintiffs' Motion to Compel Discovery Responses. ([Filing No. 147](#)).  Plaintiffs' motion will be granted, in part.

## BACKGROUND

In this action, Plaintiffs have asserted several claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., including: (1) disparate treatment—alleging that through its Fitness-for-Duty Program, Defendant implemented qualification standards that screen out individuals with disabilities; (2) disparate impact—alleging that the Fitness-for-Duty program had an adverse impact on individuals with disabilities; (3) unlawful medical inquiry; and (4) failure to accommodate.  Plaintiffs also have alleged violations of the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff *et seq*. and state law.  ([Filing No. 20](#).)

## DISCUSSION

Plaintiffs have filed a motion to compel Defendant to produce documents responsive to Plaintiffs' Request for Production Nos. 22, 23, 24, 25 and 33.  Plaintiffs contend that these Requests seek critical information regarding Defendant's "motivations" for allegedly reducing its workforce, both generally and through its Fitness-for-Duty Program.  These "motive" documents

include: (1) documents about Defendant's efforts to reduce its workforce (Request No. 22); (2) personnel information relating to who in Defendant's organization is responsible for developing, implementing, and enforcing the Fitness-for-Duty policies (Request Nos. 23, 24, 25 and 33); and (3) email communications of Defendant's Chief Executive Officer ("CEO"), Lance Fritz, and his predecessors. In opposition to the motion, Defendant essentially maintains that the requests seek irrelevant information, and/or are overly broad and burdensome.

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 "is to be construed broadly and encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Hodges v. Pfizer, Inc., Civ. No. 14-4855-ADM/TNL, 2016 WL 1222229, *2 (D. Minn. March 28, 2016) (internal quotation omitted). Still, the scope of discovery is not unlimited. Courts must limit the frequency or extent of discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b). Further, under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Request for Production No. 22 seeks "[a]ll documents reflecting or referring to initiatives or goals to reduce Defendant's workforce, or to reduce certain segments of Defendant's workforce, since January 1, 2009." (Filing No. 148.) Plaintiffs argue that Defendant should be compelled to respond to this Request because discovery has revealed a decline in Defendant's workforce during the years of the Fitness-for-Duty Program, and Plaintiff Geoffrey Miller testified that workforce reduction efforts were in effect around the time of his removal from service. Plaintiffs argue that they should be able to investigate if Defendant used its Fitness-for-Duty Program to reduce its workforce. Plaintiffs maintain that evidence of a workforce reduction is relevant to the pretext element of their ADA claims, as well as their anticipated motion for class certification.

Defendant contends, however, that workforce reduction documents are irrelevant, and that Request No. 22 is, at best, premature. Defendant argues that Plaintiffs' belief that Defendant was motivated by a desire to reduce its workforce when changes were made to the Fitness-for-Duty Program is pure speculation. Defendant maintains that it should not have to produce workforce reduction documents unless, and until, Plaintiffs can provide some support for their belief that the Fitness-for-Duty Program served as a workforce reduction mechanism. Also, Defendant asserts that if support for Plaintiffs' belief exists, it would be in previously-produced documents.

The Court agrees with Plaintiffs that the information sought through Request No. 22 is relevant to the claims in this action. However, the Court nevertheless finds that the Request is overly broad. Therefore, the Court will order Defendant to respond to this Request, but limit production to documents which reference *both* the Fitness-for-Duty Program and initiatives/goals to reduce Defendant's workforce since January 1, 2009. Stated differently, to be responsive to this Request, as limited by the Court, the document must reference each of these subjects.

Plaintiffs also ask that the Court compel production of personnel files for certain individuals involved in the Fitness-for-Duty Program. Request for Production No. 25 seeks "[a] complete copy of the personnel files of all persons identified in response to Interrogatory Nos. 2, 4, 10, 12, 13, or 16."[1] (Filing No. 148.) Request for Production No. 33 requests "[a]ll documents reflecting compensation paid to persons identified in response to Interrogatory Nos. 4, 10, 12, and 13."[2] Request for Production No. 23 seeks "[a]ll contracts concerning work by medical professionals for Defendant relating to fitness-for-duty evaluations since January 1, 2009, and all documents reflecting the negotiation of such contracts." Request for Production No. 24 seeks "[a]ll documents reflecting the terms and conditions of work performed by medical

---

[1] Plaintiffs have agreed to limit this Request to personnel files of individuals identified in Defendant's responses to Interrogatory Nos. 4 (excluding attorneys), 12, and 13. Interrogatory No. 4 asked Defendant to identify individuals responsible for the development and implementation of Defendant's policies, practices, and procedures relating to Fitness-for-Duty evaluations since January 1, 2009. Interrogatory No. 12 asked Defendant to identify individuals responsible for writing and enforcing the "Medical Rules" policy. Interrogatory No. 13 asked Defendant to identify individuals responsible for writing and enforcing the "Restricted Prescription Drugs" policy. (Filing No. 148.)

[2] Plaintiffs have agreed to narrow this request to compensation documents from all persons identified in Defendant's response to Interrogatory Nos. 4 (excluding attorneys) and 13. (Filing No. 148.)

3

professionals for Defendant relating to fitness-for-duty evaluations since January 21, 2009."[3] (*Id*.) Again, Plaintiffs argue that these Requests are relevant to the pretext elements of their ADA claims and a future class certification motion. Plaintiffs contend that they are entitled to discover whether certain personnel documents include evidence that Defendant provided incentives to Fitness-for-Duty staff if they subjected employees to evaluations or removed employees from service.

Plaintiffs have agreed to limit Request Nos. 25 and 33 to include only fifteen individuals. Plaintiffs have likewise agreed to reduce the scope of Request Nos. 23[4] and 24. However, Defendant maintains that these Requests, even as narrowed, are overly broad because they intrude upon confidential employment information of non-parties. Defendant contends that the personnel files would include documents, such as work history and training records, which are irrelevant to the claims in this suit. Also, Request No. 24, which seeks information about terms and conditions of employment, could be interpreted to include a variety of irrelevant documents, such as health insurance information, leave of absence policies, dress code guidelines, and vacation leave information. Moreover, Defendant asserts that general compensation information about non-parties would not assist Plaintiffs in establishing their claims. Defendant argues that Plaintiffs should be required to further narrow Request Nos. 24 and 25 by specifically identifying the documents they seek. As to Request No. 33, Defendant contends that the information sought could be more effectively discovered through more tailored discovery requests and deposition questions. Also, Defendant maintains that Request No. 33 should be limited to the statute of limitations period for Plaintiffs' claims.

---

[3] Plaintiffs have agreed to narrow this request to all documents relating to the terms and conditions of work performed for Defendant by Dr. John Holland, Defendant's Chief Medical Officer; Deborah Gengler, Defendant's General Director of Clinical Services; three Associate Medical Directors; and the Fitness-for-Duty nurses. (Filing No. 148.)

[4] Plaintiffs have agreed to limit the scope of Request for Production No. 23 to include only contracts concerning work by the Associate Medical Directors and Fitness-for-Duty nurses as independent contractors to Defendant. Defendant has agreed to produce contracts between it and the Associate Medical Directors, as well as the Fitness-for-Duty nurses. However, Defendant maintains its asserted objections to producing documents "reflecting the negotiation of such contracts." (Filing No. 158.) For the reasons explained above in relation to the other Requests seeking personnel information, the Court finds that Defendant's agreement to produce the contracts is sufficient for compliance with this Request.

4

The Court finds that Request Nos. 23, 24, 25 and 33 each seek relevant personnel information. However, the Court agrees with Defendant that, even as narrowed, these Requests remain overly broad and must be further limited in scope. Plaintiffs have offered no legitimate reason as to why they need the *entire* personnel file of certain individuals. See [Morris v. R.A. Popp Enterprises, Inc., No. 8:11CV263, 2013 WL 6118406, *7 (D. Neb. Nov. 20, 2013)](#) ("The plaintiffs have not explained why they need the entire personnel files for [non-parties], or how all the information within those files could lead to the discovery of admissible evidence . . . As written, Requests 55 and 56 are overly broad and unreasonably intrude into the confidential files of employees who are not parties to this litigation").

Thus, in response to Request No. 25, Defendant shall provide documents reflecting: (1) training and instruction provided to the narrowed list of individuals identified by Plaintiffs with regard to implementation of the Fitness-for-Duty Program; (2) whether the identified individuals were subject to the Fitness-for-Duty Program; and (3) whether those individuals were reviewed, praised for, or received bonuses for removing people from service under the Program. Similarly, in response to Request No. 33, Defendant shall provide compensation information for the narrowed list of individuals that references or reflects direct or indirect financial incentives, including but not limited to bonuses, related to evaluation or removal of employees under the Fitness-for-Duty Program. As to Request No. 24, within ten days of this Order, Plaintiffs shall identify the types of documents sought in sufficient detail to allow Defendant to properly respond to this Request. After Plaintiff has identified the types of documents sought, Defendant shall produce employment records related to the terms and conditions of work performed by Plaintiffs' narrowed list of individuals. Items such as health insurance information, leave of absence policies, dress code guidelines, and vacation and sick leave information are irrelevant and need not be produced.

Plaintiffs also ask that the Court compel the production of emails of CEO Lance Fritz, and his predecessors beginning in 2009, to the extent they comply with the parties' existing ESI Agreement. Plaintiffs contend that the parties have already agreed upon search terms for other electronic discovery, and that they desire to apply these same search terms to Mr. Fritz's email. Plaintiffs argue that this information is relevant because Mr. Fritz was identified in deposition

testimony as being directly involved as a decision-maker with regard to the Fitness-for-Duty Program.

Defendant asserts that it is not withholding any responsive emails identified through email searches on the basis that one of the senders or recipients is or was a CEO.  Rather, Defendant contends that CEOs are not appropriate custodians in the search for relevant emails because they were not directly involved in the creation, implementation, and revision of the Fitness-for-Duty Program.  Defendant argues that no discovery has indicated that Mr. Fritz or other former CEO made any decisions regarding the Fitness-for-Duty Program.  Also, Defendant asserts that to the extent any CEO was involved in substantive email discussions regarding the Fitness-for-Duty Program, such emails would have been included in the production of emails from other custodians.

The Court finds that there has not been a sufficient showing that this information is necessary and not cumulative of other materials.  See Lutzeier v. Citigroup, Inc., No. 4:14-cv-00183, 2015 WL 430196, *7 (E.D. Mo. Feb. 2, 2015) (denying the plaintiff's request to add executives as custodians in ESI search because the plaintiff had not shown that the executives had unique or personal knowledge of the subject matter).  Should further discovery reveal that Mr. Fritz or his predecessors have unique knowledge, the Court may reconsider its ruling on this issue.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Compel Discovery Responses (Filing No. 147) is granted, in part, as set forth above.

Dated this 6th day of June, 2018.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge