IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| QUINTON HARRIS, GEOFFREY MILLER, NORMAN MOUNT, SCOTT ZINN, THOMAS TAYLOR, and JOHN BAKER,<br><br>Plaintiffs,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | 8:16CV381<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on plaintiffs' motion for class certification pursuant to Fed. R. Civ. P.23, Filing No. 240. Plaintiffs also filed supporting brief and evidence in support of the motion. Filing Nos. 241-249. Union Pacific filed a brief in opposition and supporting exhibits, Filing Nos. 259 and 261; and plaintiffs filed a reply brief, Filing No. 289. This case is a putative class action suit and involves claims of employment disability discrimination under the American with Disabilities Act (ADA), 42 U.S.C. § 12112 et seq. and the Genetic Information Nondiscrimination Act (GINA), 42 U.S.C. § 2000ff-1(b). Filing No. 20, Amended Complaint.[1]

**BACKGROUND**

Union Pacific has a company-wide Fitness-for-Duty ("FFD") program. *See* Filing No. 20, Ex. A. In 2014, Union Pacific made changes to this program. Employees in certain positions under the new policy are required to disclose specific health conditions, and the newly implemented policy automatically excludes employees who disclosed

---

[1] The amended complaint also involves a number of state law claims related to civil rights, genetic rights, and human rights statutes. Filing No. 20, Amended Complaint.

these conditions from employment.  These employees then had to have a fitness for duty evaluation, and according to plaintiffs, Union Pacific routinely ignores the medical opinions of outside doctors.  The records are sent to Dr. John Holland in Olympia, Washington, and his support staff.  Dr. Holland and his staff do not do a physical evaluation, but he and his designees make all decisions regarding who is fit for duty.

Plaintiffs are all previous employees of Union Pacific.  Many had worked for years and were allegedly qualified and performing their jobs with no problems.  They were pulled from their jobs under Union Pacific's new program, evaluated, and then excluded from their positions at Union Pacific, even though, they argue, they had no trouble fulfilling the essential functions of their jobs.  Plaintiffs challenge Union Pacific's policy of removing employees from their jobs based on an arbitrary and scientifically-unsound "1% Rule" regarding the risk of "sudden incapacitation."[2]

Based on these allegations, the plaintiffs assert three class claims under the ADA on behalf of themselves and putative class members: (1) disparate treatment—alleging that through its Fitness-for-Duty program, Union Pacific engaged in a pattern or practice of discrimination by implementing qualification standards and other criteria that screen out individuals with disabilities; (2) disparate impact—alleging that the Fitness-for-Duty program had an adverse impact on individuals with disabilities by, for example, screening them out or tending to screen them out of work; and (3) unlawful medical inquiry—alleging

---

[2] Uniform Application of the 1% Rule – the 1% Rule is applied across-the-board to all decisions to remove a worker from service based on a reportable health event. (Filing No. 259 at 21-22, ¶¶ 75-76.)  Dr. Holland readily admits that Union Pacific "applies a uniform threshold risk level" by considering any condition "with a risk for sudden incapacitation greater than 1% in the coming year" to require restriction from work. (Filing No. 249-16 at 16.)  "Unacceptable risk means an absolute current risk of sudden incapacitation greater than 1% annual occurrence rate in the coming year." (Filing No. 291, Ex. C at 3-4, ¶ 3.1.14)

violations of 42 U.S.C. § 12112(d)(4)(A), which provides that an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." They seek relief on behalf of the following proposed class:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

Filing No. 20, Amended Complaint, ¶ 116.

Plaintiffs move to certify the class to include: All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.

**DISCUSSION**

A class action "saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion[.]" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quotations and modifications omitted). The district court may grant certification only after conducting a "rigorous analysis" confirming that the requirements are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the

extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit. "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994).

Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The United States Supreme Court has summarized the four basic requirements as these: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). The determination under Rule 23(a) is not perfunctory, "the court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). "Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (internal citations omitted).

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their . . . claims as a class action." *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005) (citing *Amchem*, 521 U.S. at 614). Rule 23(b) allows a class action if (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non-class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate and the class action is a superior method for adjudication. *See* Fed. R. Civ. P. 23(b).

In addition to the Rule 23(a) and (b) requirements, pursuant to Rule 23(c)(1)(B): "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c). The plaintiffs propose a class action on behalf of four classes pursuant to Fed. R. Civ. P. 23.

**A.  Rule 23(a) Requirements**

1. Numerosity

The first prerequisite the plaintiffs must meet under Rule 23(a) is numerosity. *Amchem*, 521 U.S. at 613. Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). Rule 23(a) "requires only the impracticality, not the impossibility, of joinder." *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978). The plaintiffs need only show "that joining all members of the class would be difficult." *Caroline C. By & Through Carter v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted). "There is no magic number for proving numerosity, but courts have stated as few as forty class members is sufficient to show

joinder is impracticable." *Harris v. D. Scott Carruthers & Assoc.*, 270 F.R.D. 446, 450 (D. Neb. 2010) (citing *Hale v. AFNI, Inc.*, 264 F.R.D. 402, 404 (N.D. Ill. 2009)). "The Eighth Circuit has not established strict requirements regarding the size of a proposed class." *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 153 (S.D. Iowa 2001).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class . . . ." *Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275, 289 (D. Neb. 2010) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983)). "[W]here the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Id.* Typically, the court may rely on the pleadings, however "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met." *Chesher v. Neyer*, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (citing *Gen. Tel. Co. of S.W.*, 457 U.S. at 160).

In the instant case, the plaintiffs have presented evidence of potentially 7,000 class members. Union Pacific disputes this exact number but does not dispute that plaintiffs have met the numerosity requirement. After consideration of the number of persons in the proposed classes, the nature of the action, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds the plaintiffs satisfy the numerosity requirement.

### 2. Commonality

Second, the plaintiffs must prove the element of commonality. *Amchem*, 521 U.S. at 613. Rule 23(a)(2) requires there be "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2). "Rule 23 is satisfied when the legal question 'linking the

class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (quoting *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982)). However, "[t]he rule does not require that every question of law or fact be common to every member of the class." *Paxton*, 688 F.2d at 561. "[T]he commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied." *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999). Nevertheless, Rule 23(a)(2) "language is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions"'". *Wal-Mart Stores*, 564 U.S. at 349 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). The Court stated in *Wal-Mart Stores*:

> What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* at 350.

Defendant disagrees and argues that the commonality and typicality criteria are not met, because there must be a determination of whether the class members are "qualified" for the position or can be reasonably accommodated before one can determine class composition. This will vary, argues Union Pacific, based on the individual employee and the individual job. The Court must, argues Union Pacific, determine if the individual is qualified. See *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 196 (3rd Cir. 2009) (ADA case where Third Circuit found that Teamsters did not apply to class action).

In this case, the Court agrees that the fitness-for duty policies and reportable health events are uniformly carried out nationwide by the same group of decision-makers, namely Dr. Holland and his team of doctors and nurses. Second, all employees who are subject to this policy must disclose these reportable health events. Well over three-fourths of Union Pacific's 40,000 plus employees are considered working in these positions and therefore subject to the reportable healthy events policy. Filing No. 248-36, Holland 30(b)(6) Dep. (3-28-2017) 104:21- 106:21; Filing No. 248-12, Ex. 27 at 3). Each employee who has a reportable health event is removed from work pending evaluation. Each employee must undergo an evaluation. Medical records are obtained on each of these employees. The employees are not physically examined by Dr. Holland or his team. The doctor merely looks at the employee's medical records, references materials for their suspected condition or diagnosis, and decides whether the employee poses a greater than 1% risk of sudden incapacitation within the next year. (*See*, e.g., Filing No. 248-38, Holland Dep. (8-9-18) 320:5-321:12; 324:20-325:16, 335:15-339:24, 344:17-345:8, 351:22-352:13, 382:6-384:7 (Dr. Holland purporting to explain calculations for various named Plaintiffs and class members). Where appropriate, work restrictions are implemented. In most cases such broad restrictions make it impossible for the employee to continue working. The proof will be the same regarding the systemic disability discrimination, operating procedures and policies and the affirmative defenses (direct threat and business necessity.)

### 3. Typicality

Third, the class representatives have the burden to show typicality of their claims in relation to the other putative members of the class. *Amchem*, 521 U.S. at 613. Rule

23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class." See Fed. R. Civ. P. 23(a)(3). The Eighth Circuit, "long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Melon Mtge. Co.*, 64 F.3d 1171,1174 (8th Cir. 1995). However, "[t]he presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir. 2006).

The Court finds the claims and defenses are typical of the class. They are all alleging discrimination; they are all being affected by the same policy; most of the employees allegedly are either discharged or constructively discharged by the "1% rule." The rules are governed by commercial truck regulations that have been adapted for the railroad. These regulations and fitness for duty policies have led to the dismissal or significant restrictions to the employees. Of the 7,000 Union Pacific employees that have had to report a health event under the new policy, it appears that at least 3,145 were not cleared for work or were issued work restrictions; for those with a "critical diagnoses" they were not cleared for work or given very high levels of work restrictions; and workers were

9

often given long-term restrictions, lasting hundreds of days if not years. Accordingly, for these reasons, the Court finds the typicality requirement has been met.

### 4. Adequacy of Representation

The fourth prerequisite a plaintiff must meet under Rule 23(a) for class certification is adequacy of representation. *Amchem*, 521 U.S. at 613. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union National Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (citing *Gonzales v. Cassidy*, 474 F.2d 67, 72 (6th Cir. 1973)).

The plaintiffs have shown they share a common interest with the putative class members and that, as the class representatives, they will vigorously prosecute the interests of the class through qualified counsel. Plaintiffs have declarations from 44 class members who have experienced the discrimination alleged herein.[3] There is no indication, as the defendants argue, the plaintiffs' interests are divergent or opposed. The plaintiffs demonstrated a strong understanding of their case, their responsibilities to the class, and the expectations as class representatives. The Court believes that counsel

---

[3] These names include: Alarcon Decl.; Barkmeier Decl.; Barrera Decl.; Bartels Decl.; Brasier Decl.; Bray, Mathew Decl.; Bray, Mike Decl.; Brollini Decl.; Bullock Decl.; Carlton Decl.; Cervera Decl.; Corrington Decl.; Cushman Decl.; Daniel Decl.; DeGeer Decl.; Derr Decl.; Donahue Decl.; Fegler Decl.; Freed Decl.; Garrett Decl.; Hagar Decl.; Harpster Decl.; Hawkins Decl.; Hoffman Decl.; Hunt Decl.; Hurd Decl.; Hyatt Decl.; Jenkins Decl.; Kane Decl.; Karrick Decl.; Kirk Decl.; Koci Decl.; Loeher Decl.; Malone Decl.; Mayer Decl.; McDonald Decl.; Mendrun Decl.; Meza Decl.; Moore Decl.; Parker Decl.; Powell Decl.; Pruitt Decl.; Rivera Decl.; Soreng Decl.) Filing No. 248-33, Ex. 95.

will also fairly and adequately represent the class members, and they are experienced and competent to lead this case.

### B. Rule 23(b)(3) Requirements

For class certification, the plaintiffs must also prove this action may be maintained under Rule 23(b)(1), (2), or (3). Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision." *Bryant v. Bonded Accounts Serv./Check Recovery*, 208 F.R.D. 251, 261 (D. Minn. 2000).

#### 1. Predominance

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1777, p. 518-19 (2d ed. 1986)). "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). "Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist." *D'Alauro v. GC Servs. Ltd. P'Ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citation omitted). "[W]hen one or more of the central issues in the action are common to the class and can

11

be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Harris v. D. Scott Carruthers & Assoc.*, 270 F.R.D. 446, 453 (D. Neb. 2010) (quoting *Jenkins*, 782 F.2d at 472) (alteration in original).

Union Pacific disagrees relying on the *Ebert* and *Amchem* analysis. "The requirement of predominance under Rule 23(b)(3) is not satisfied if individual questions … overwhelm the questions common to the class." *Ebert v. General Mills, Inc.*, 823 F.3d 472, 478-79 (8th Cir. 2016). "In contrast to Rule 23(a)(2), the issue of predominance under Rule 23(b)(3) is qualitative rather than quantitative." *Id.* Indeed, "the predominance criterion is far more demanding" than commonality. *Amchem*, 521 U.S. at 624. "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation … and goes to the efficiency of a class action as an alternative to individual suits." *Ebert*, 823 F.3d at 479 (internal citations and quotations omitted).

Union Pacific contends that individual questions overwhelm any common ones. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prime facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods v. Bouaphakeo*, 577 U.S. __, 136 S.Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-97 (5th ed. 2012)). "If to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Avritt v. Reliastar Life Insr. Co.,*

615 F.3d 1032, 1035 (8th Cir. 2015) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

Union Pacific argues that plaintiffs' individual claims and factual issues overwhelm the individual issues. Thus, argues Union Pacific, this is not a superior method of adjudication. Further, Union Pacific contends that a mere finding of liability cannot be used to determine punitive damages in the first stage. That determination argues Union Pacific must be made at the individual stages of the litigation. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 434 (5th Cir. 1998); *Equal Employment Opportunity Comm'n v. JBS USA, LLC*, No. 8:10CV318, 2011 WL 13137568, at *2–3 (D. Neb. May 31, 2011) (quoting *Allison* and similarly concluding "that punitive damages should be part of the Phase II litigation").

Lastly, Union Pacific contends that members of the class do not have personal standing. For example, certain employees were pulled from work, paid during their leave, and reinstated thereafter. They have no injury in fact. "For a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision." *Halvorson v. Auto-Owners Insur. Co.*, 718 F.3d 773, 778 (8th Cir. 2012). "Although federal courts do not require that each member of a class submit evidence of personal standing, a class cannot be certified if it contains members who lack standing." *Avritt*, 615 F.3d at 1034.

The Court finds that "questions of law or fact in this case are common to the class members and predominate over any questions affecting only members." Fed. R. Civ. P. 23(b)(3). The proposed classes are sufficiently cohesive as to the alleged pattern of

discriminatory decision making to the class, more so than to the individuals.[4] The plaintiffs as a whole do in fact allege and have injury. The same evidence will be used to establish class-wide proof.

### 2. Superiority

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." *See* Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 161 S.D. IA 2001) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial dis economy." *Estate of Mahoney*, 204 F.R.D. at 161 (quoting *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D. Mo. 1997)) (emphasis in original).

Defendants filed a motion to dismiss. Filing No. 87. This Court held:

> There appear to be issues capable of class-wide resolution presented in the Amended Complaint. The allegations, taken as true, show that one or more

---

[4] The plaintiffs identify their support for the pattern or practice liability:
The record includes: (1) a uniform, written reportable health events policy; (2) uniform implementation of the policy by a small group of decision-makers, guided by standardized policies and practices; (3) evidence that the policy is invalid because, among other things, it is based on incorrect generalizations about the risk of sudden incapacitation posed by certain health conditions, including the scientifically unsound 1% Rule and inapplicable materials governing commercial truck drivers; (4) internal documents showing that the company was aware of the discriminatory intent and outcomes of its policy; (5) numerous specific instances of discrimination suffered by class members; and (6) data showing a pattern of thousands of workers who have suffered adverse outcomes as a result of Union Pacific's policy.
*See* ECF No. 249 at 5-21, §§ III-V (detailing evidence). Filing No. 289, at 16.

> of the central issues are common to the class and can fairly be said to predominate over individual issues. Class-action treatment is not prohibited just because there may be some matters that will have to be tried separately. The plaintiffs challenge a single cohesive policy and a single injunction under Fed. R. Civ. P. 23(b)(2) could arguably provide relief to each member of the class. Also, the court has tools at its disposal for management of class actions and it may turn out that a class action is the "superior" method of adjudicating the controversy. The case is potentially a candidate for hybrid class action treatment under Rule 23(c)(4).

Filing No. 111 at 8-9. Plaintiffs contend that they have now deposed a number of defendant's employees; reviewed hundreds of thousands of documents and email, and believe the evidence supports a finding certifying this case as a class action. There are common questions regarding the putative class, including a pattern and practice of discrimination; and the viability of Union Pacific's affirmative defenses. The Court agrees that a class action here is superior. As previously stated herein, much of the cases relies on common proof. To allow individual lawsuits would duplicate this proof over and over again.

### CONCLUSION

The Court finds that his case involves a single, uniform reportable events policy. The Court agrees with the plaintiffs that the Eighth Circuit has not joined the Third Circuit in requiring a stronger administrative feasibility requirement. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (discussing standards); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017) ("We therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement"). Rather, the Eighth Circuit simply requires that a class "must be adequately defined and clearly ascertainable." *Sandusky Wellness Ctr.*, 821 F.3d at 996.

"A class may be ascertainable when its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017).

The list in question in this case was given to plaintiffs by Union Pacific. *See* Filing No. 248-29, at 5-6, Ex. 68, Request No. 14, and Supp. Response. Thereafter, Union Pacific supplemented this production to identify a total of 7,723 current and former employees that are on this class list. *Id.* at 6. According to Union Pacific, this list included the following categories from the eHealthSafe database: (1) individuals identified as having a Reportable Health Condition Service or a critical diagnosis; (2) individuals who had a service outcome entry of "NOTMC" (not medically cleared to return to work) or CLPERMR (cleared to return to work with permanent work restrictions); (3) individuals who had a workability entry of "Temporary – Not Fit for Duty" or "Permanent – Not Fit for Duty"; and (4) individuals who had a workability entry of "Sudden Incapacitation." *Id.* Rule 23 requires only "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Court also agrees that where a pattern-or-practice of discrimination is going to be tried, followed by a trial on injuries and members of the class who wish to make claims, a *Teamsters* analysis is an appropriate one. *Teamsters*, 431 U.S. at 360-61, *See Franks v. Bowman Transp. Co.*, 424 U.S. 747, 772-73 (1976). In that regard, the Court in *Teamsters* stated: the plaintiff "is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy."

*Teamsters*, 431 U.S. at 360.[5]  Instead, the focus will be on "a pattern of discriminatory decision making." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984). Further, the documents incorporating the policy in question in this case show that sudden incapacitation work restrictions are both standard and uniform.  Filing No. 248-28, Ex. 46, at 1.  Dr. Holland agreed that these work restrictions do not vary by position and that the standard work restrictions are in fact standard.

The Court made mention in its previous order regarding class action status, Filing No. 111, that this case might be appropriate for certification under Rule 23(b)(2) and Rule 23(b)(3).  These are referred to as "hybrid" class actions.  *See* W. Rubenstein, *2 Newberg on Class Actions* § 4:38 (5th ed. 2012) (noting that hybrid certification "is frequently viewed as the most attractive of the alternatives").  The Court, after thoroughly reviewing the alleged facts and law finds the hybrid trial plan will best meet the needs of this case. The parties will litigate liability and injunctive relief in Phase One of the trial.  Then, in Phase Two, the parties will litigate damages and other remaining issues through individual hearings, or group hearings as appropriate, or by stipulations of the parties. *See Ebert*, 823 F.3d at 480 (noting the hybrid approach is available and "gaining ground"). This model is consistent with litigating class discrimination cases as set forth under *Teamsters*, 431 U.S. 324.  The Court will certify liability and injunctive relief under Rule

---

[5] A number of Courts have used the *Teamsters* analysis to litigate both ADA cases and other cases that involve individual issues.  *See Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423, 427-32 (W.D.N.Y. 2005) (finding hostile work environment claims compatible with the pattern-or-practice framework); *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 448-49 (N.D. Cal. 2001) (certifying ADA disability discrimination class action under Teamsters-type framework); *see also E.E.O.C. v. Northwest Airlines, Inc.*, 216 F. Supp. 2d 935, 938 (D. Minn. 2002) (approving *Teamsters* approach in EEOC action alleging pattern-or-practice disability discrimination); *E.E.O.C. v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1069-070 (C.D. Ill. 1998) (approving *Teamsters* approach in EEOC action alleging pattern-or-practice claims of hostile work environment).

17

23(b)(2) and will certify the back pay and compensatory damages under Rule 23(b)(3). The Court will adopt the proposed trial plan as outlined by the plaintiffs:

### *First Stage – Liability and Injunctive Relief*

*First, the jury will decide*:

• Whether Union Pacific has engaged in a pattern or practice of disability discrimination;

• Whether Union Pacific's practices were justified by "direct threat";

• Whether Union Pacific's practices were justified by business necessity (if allowed);

• Whether Union Pacific's conduct meets the standard for an award of punitive damages; and

• Whether Union Pacific is liable to the named Plaintiffs, as well as their damages.

*Second, the Court will decide:*

• Injunctive relief.

### *Second Stage – Teamsters Hearings*

• Individual Hearings on reinstatement, back pay and compensatory damages, ADA "qualification," and individual defenses; and

• In the event of a punitive damages finding, the aggregate amount of punitive damages owed and the distribution to each class member.

THEREFORE, IT IS ORDERED THAT:

1. Plaintiffs' motion for class certification, Filing No. 240, is granted. The Court hereby certifies liability and injunctive relief under Rule 23(b)(2) and back pay and compensatory damages under Rule 23(b)(3).

2. The Court certifies the class to consist of:

    All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.

3. The Court approves notice to the class by U.S. mail, in the form proposed by Plaintiffs as Exhibit 97 to the motion, Filing No. 248-35.

4. The Court appoints Plaintiffs as class representatives and appoints Plaintiffs' counsel Nichols Kaster, PLLP, as class counsel.

Dated this 5th day of February, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge